IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REINHARD DRECHSEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:14-cv-162-M-BN |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | |
| COMPANY d/b/a/ PEERLESS | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL AND SETTING SCHEDULING CONFERENCE[1]**

Plaintiff Reinhard Drechsel has filed a Motion to Compel Production of Documents, *see* Dkt. No. 26, which United States District Judge Barbara M. G. Lynn has referred to the undersigned United States magistrate judge for determination, *see* Dkt. No. 27. Judge Lynn subsequently referred this case to the undersigned for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. *See* Dkt. No. 46.

Defendant Liberty Mutual Insurance Company filed a response to the motion to compel, *see* Dkt. No. 35, and Plaintiff filed a reply, *see* Dkt. No. 39. The Court held oral argument on the motion on October 26, 2015. *See* Dkt. No. 44.

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

For the reasons and to the extent explained below, Plaintiff's Motion to Compel Production of Documents [Dkt. No. 26] is GRANTED in part and DENIED in part.

## Background

In this employment discrimination case, Plaintiff alleges that Defendant terminated or constructively discharged him due to his age and disability and in retaliation for taking medical leave. Plaintiff asserts claims under the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA"), Family Medical Leave Act ("FMLA"), and Texas Commission on Human Rights Act ("TCHRA"). *See* Dkt. No. 4.

Plaintiff served Requests for Production of Documents ("RFPs") on Defendant on April 16, 2014. Defendant served its objections and responses on June 2, 2014, *see* Dkt. No. 26-1, and produced documents subject to those objections. Plaintiff served its Motion to Compel Production of Documents on October 1, 2015. *See* Dkt. No. 26.

## Legal Standards

Federal Rule of Civil Procedure 37 governs motions to compel discovery responses. Rule 37 provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer an interrogatory under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Under Rule 37(a)(5), "[i]f the motion is granted in part and denied in part, the court

may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

Generally speaking, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). The party resisting discovery must show specifically how each request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

## Analysis

As an initial matter, Defendant complains that Plaintiff only conferred with Defendant's counsel about a small fraction of the documents sought in the motion to compel. Plaintiff seeks to compel production of documents in response to RFP Nos. 1, 6, 9-22, 30-32, 45, and 56. The record contains emails demonstrating that the parties conferred about some of the RFPs, as discussed below, but Defendant asserts that Plaintiff did not confer about RFPs Nos. 1, 6, 9-12, 18-19, 21, 22, 30, 45, or 56.

A motion to compel must include a certification that the movant has in good

faith conferred or attempted to confer with the person or party from whom it seeks disclosure or discovery. *See* FED. R. CIV. P. 37(a)(1); N.D. TEX. L. CIV. R. 7.l(a). When a motion to compel addresses a number of matters, a good faith effort to confer typically requires that the parties discuss each matter in good faith to comply with conference requirements. *See Anzures v. Prologis Tex. I LLC*, 300 F.R.D. 314, 316 (W.D. Tex. 2012).

Plaintiff's motion to compel contains a certificate of conference that states that his counsel conferred with Defendant's counsel "regarding document supplementation and matters the subject of this motion and the parties were unable to reach agreement." Dkt. No. 26 at 15. But the emails between counsel are more narrowly focused and do not address all of the matters raised in the motion, and, according to the evidence before the Court, it appears that the conference requirements have not been met.

A failure to satisfy conference requirements does not, however, mandate summary denial of a motion to compel because the Court retains discretion to "waive strict compliance with the conference requirements" and to consider the motions on their merits. *Pulsecard, Inc. v. Discover Card Svcs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996). The Court may deem a failure to confer excusable when the conference would merely be "a waste of time," *Vinewood Capital, L.L.C. v. Al Islami*, No. 406-CV-316-Y, 2006 WL 3151535, at *2 (N.D. Tex. Nov. 2, 2006), or when "it is clear that the motion is opposed and that a conference would neither have eliminated nor narrowed the parties' dispute," *Obregon v. Melton*, No. 3:02-CV-1009-D, 2002 WL 1792086, at *1 n.3

(N.D. Tex. Aug. 2, 2002). In this case, the Court will consider the motion to compel but also warns Plaintiff that future failures to fully comply with the conference requirements may subject him to sanctions or summary denial of a motion to compel as to which the conference requirement was not observed in advance of filing.

In his motion to compel, Plaintiff seeks documents for persons employed in Defendant's "Central Region," which, unbeknownst to Plaintiff at the time, comprises six states. Defendant objected to the geographic scope of the requests when it served its responses. Prior to the hearing on the motion to compel, Plaintiff agreed to limit the geographic scope of the requested discovery for Defendant's "Central Region" to Defendant's inside property claims organization (the Personal Lines Property Loss Inside Claims Department) in Richardson, Texas where Plaintiff worked or any other place where Plaintiff's immediate supervisors and their managers supervise and make decisions about employees. *See* Dkt. No. 26 at 3, n.1; Dkt. No. 35 at 7, n.2.

Plaintiff also sought documents for the time period from January 1, 2009 to the present. Plaintiff alleges that, when he asked to be promoted in 2009, he was informed by his then-supervisor, Theresa Addicks, that he would not get any further raises because he made too much money and that he continued to seek career ladder promotions and appropriate raises through the end of his employment to no avail. He also alleges that his workload was greatly increased when he returned from FMLA leave in July 2011. Defendant objects to producing documents that it contends are precluded under the statute of limitations and any after Plaintiff's employment ended on July 9, 2012.

Discovery of information both before and after the liability period may be relevant, and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period. *See Beasley v. First Am. Real Estate Info. Svcs., Inc.*, No. 3-04-1059-B, 2005 WL 1017818 at *1 (N.D. Tex. Apr. 27, 2005). And courts have held that two to five years is an appropriate limitation for information regarding other employees in employment discrimination cases. *See Beasley*, 2005 WL 1017818, at *1 (two years); *Ellison v. Patterson-UTI Drilling Co.*, No. V-08-67, 2009 WL 3247193, at *4 (S.D. Tex. Sept. 23, 2009) (five years). Under the circumstances of this case and in light of the relief that Plaintiff seeks on his claims, the Court overrules Defendant's objections to Plaintiff's time period and determines that Defendant must produce documents for the time period from January 2009, when Plaintiff first alleges discrimination, through the present, which would be less than five years after Plaintiff's employment ended.

Plaintiff sought the personnel files and related documents for persons who held the same position as Plaintiff, Claims Specialist II, or were promoted one level up to Claims Specialist III or Sr. Claims Specialist, and who had the same supervisors and managers as Plaintiff. *See* RFP Nos. 13-21, 31-32; Dkt. No. 26-1 at 6-9, 11. Defendant objects to those requests on the grounds that they are overly broad, unduly burdensome, vague, ambiguous, not sufficiently limited in time and scope, seek documents not relevant nor reasonably calculated to lead to the discovery of admissible evidence, and invade the privacy of individuals who are not parties to this lawsuit. *See id.*

Plaintiff also sought documents concerning similarly-situated employees and employees with similar complaints or claims as those asserted by Plaintiff or as to similar complaints made against Plaintiff's supervisors. *See* RFP Nos. 9-21, 31-32; Dkt. No. 26-1 at 4-9, 11. Subject to its objections, Defendant reports that it produced responsive documents about every employee supervised by Mike Fawkes during what Defendant characterizes as the relevant time period, even if the employee held a different position and had different responsibilities than Plaintiff, and every person who held the same position as Plaintiff during the relevant time period in Richardson, Texas, even though Defendant represents that only one of those individuals, Sharon Tittle, had the same supervisor as Plaintiff.

On September 25, 2015, Plaintiff requested supplemental documentation "for property loss specialist comparator employees," including "qualifications information, performance evaluations, promotion information, and raise information." Dkt. No. 36-2 at 38. Defendant supplemented its production by providing additional information for all of Fawkes's' team and every Claims Specialist II in Richardson, Texas, even though, according to Defendant, those employees reported to different supervisors than Plaintiff.

On the October 1, 2015 discovery deadline, Plaintiff requested additional supplemental documentation

> [f]or all Specialists II, III and Sr. Specialists underneath [Andy] Moore in the chain of command at any time during the period January 1, 2010 to the present, the following personnel documents: resumes, employment applications, offer letters, documentation of industry specific 'extra' certifications and activities such as AIC and other endeavors, history of

positions in the company and dates each was assumed, employment evaluations limited to years 2010 to 2012, as well as performance based personnel actions for that period (PIP's, warnings, disciplinary actions, etc.), documentation reflecting promotions they got at any time from 1/1/11 to the present and their performance valuation for the year immediately prior to the promotion, documentation regarding date and reasons for termination of employment. In addition, salary and raise information for these individuals from January 1, 2011 to trial.

*Id.* at 40-41. Defendant offered a compromise, which included producing "for anyone under Andy Moore who was promoted to the Specialist III/Sr. Specialist position from January 1, 2011 to December 31, 2012" pay and promotion history, resume, applications, performance evaluations for the two years prior to promotion, and any performance based disciplinary actions during the two years prior to their promotion." For Claims Specialists II in 2012 at the time of raises, Defendant offered to produce 2012 performance evaluations covering year 2011 performance. For employees on Mike Fawkes' team in 2012 at the time Plaintiff's employment ended, Defendant offered to produce any performance based disciplinary actions issued to them in 2011. *See id.* at 39-40. Plaintiff rejected the compromise and filed the motion to compel. *See id.* at 39.

Defendant contends that the scope of Plaintiff's proposed comparators is too broad. According to Defendant, there is only one similarly-situated employee – Sharon Tittle – who shared the same job responsibilities, title, and supervisor with Plaintiff during the relevant time period. Nevertheless, Defendant produced documents concerning non-comparator employees who reported to Plaintiff's supervisor, Mike Fawkes. But Defendant objects to producing the documents that Plaintiff seeks concerning Andy Moore, who was Fawkes's manager, and those in his chain of

command, because, even though Moore had ultimate decision-making authority concerning Plaintiff's employment, Defendant asserts that Moore did not exercise it concerning any decision on which Plaintiff's claims in this lawsuit are based. Defendant therefore claims that the requests for documents concerning Moore are irrelevant.

Plaintiff testified that Mike Fawkes was his direct supervisor from May 2010 until his employment with Defendant ended in July 2012, *see* Dkt. No. 36 at 2-3, and that Andy Moore was Fawkes's supervisor and the head of the claims department in which Plaintiff worked, *see id.* at 4, 8. Plaintiff also believed that Fawkes's statements that Plaintiff was too old and made too much money were originally attributable to Moore and that Fawkes relayed those statements to Plaintiff because he was in the chain of command. *See id.* at 8. Fawkes testified that he and Moore did not have any discussions regarding Plaintiff's age or the appropriate time for Plaintiff to retire from the company. *See id.* at 35. Fawkes also testified that he had sole discretion to determine which employees received raises and the amounts of those raises. Those determinations were reviewed and must be approved by Moore, but Fawkes could not remember a time when Moore did not approve one of them. *See id.* at 24, 28, 32. And Fawkes testified that he and Moore never discussed any specific performance problems with Plaintiff except during the monthly meetings when they discussed the performance of all employees assigned to Fawkes. *See id.* at 31, 34-35. Fawkes also testified that, when Plaintiff expressed a complaint about his workload to Fawkes, Moore advised Fawkes to talk to HR, who told him to document the conversation. *See*

*id.* at 35.

With respect to contemporaries, the United States Court of Appeals for the Fifth Circuit has noted that "[a] plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978). That rule does not, however, "permit a plaintiff to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Id.* As part of his proof of an age discrimination case, a plaintiff must prove that his employer gave preferential treatment to a younger employee under "nearly identical" circumstances. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002). "Employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Arters v. Univision Radio Broad. TX, L.P.*, No. 3:07-cv-957-D, 2009 WL 1313285, at *4 (N.D. Tex. May 12, 2009); *see also Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 365 (N.D. 2013). As a general rule, comparably-situated employees typically are identified by the plaintiff's work unit. *See Marshall*, 576 F.2d at 592. Additionally, "[c]ourts typically impose temporal restrictions on discovery" in discrimination cases. *Beasley*, 2005 WL 1017818, at *1.

The Fifth Circuit does not interpret "nearly identical" as synonymous with "identical," however. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260-61 (5th Cir. 2009). "[I]t is sufficient that the ultimate decisionmaker as to the employee's continued employment is the same individual, even if the employees do not share an immediate

supervisor." *Id.*

In this case, the discovery that Plaintiff requests concerning Claims Specialists II and Claims Specialists II/Sr. Specialists in Andy Moore's chain of command meets Rule 26(b)'s relevance standard and may lead to the discovery of admissible evidence. Plaintiff's ultimate employment status rested with Moore, and Plaintiff is entitled to discovery concerning employees who were supervised by persons other than Fawkes and for whom Moore held final decision making authority. *See id.* at 261-62. Those documents include, but are not limited to, the documents that Defendant's counsel offered to produce in the October 1, 2015 email included as Exhibit G in the appendix in support of Defendant's response. *See* Dkt. No. 36-2 at 39-40.

Plaintiff also sought the "complete personnel files" of any current or former employee of Defendant that either party has identified as having knowledge regarding this lawsuit [RFP No. 6], of all persons employed in Defendant's Central Region holding the position of Claims Specialists II (now modified by agreement to Defendant's Richardson office) or any comparable position since January 1, 2009 [RFP No. 16], and of any person who replaced Plaintiff or assumed any of his job duties [RFP No. 21]. Defendant objects to those requests as overbroad.

A court may order production of personnel files of a discrimination plaintiff's comparators if the information contained therein may be relevant to show that a defendant's reasons for terminating a plaintiff were pretextual. *See Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980); *Martin,* 292 F.R.D. at 365. But plaintiffs in discrimination cases do not have an unlimited ability to delve into their

-11-

employers' personnel files. *See Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 347 (5th Cir. 2015). To the extent that any of the personnel files include information relating to the reasons for Plaintiff's termination or Plaintiff's other complaints of discrimination or retaliation, they are clearly relevant and must be produced. But Plaintiff is not entitled to rummage through the personnel files in hopes of discovering information that might possible be relevant to his claim. *See Beasley*, 2005 WL 1017818, at *4.

The Court finds that Plaintiff's requests for "complete personnel files" is overbroad. Defendant must produce documents in the personnel files of potential comparators, alleged discriminators, or alleged retaliators pertaining to relating to the reasons for Plaintiff's termination or Plaintiff's other complaints of discrimination or retaliation but nothing more. Plaintiff's motion to compel is therefore granted in part as to RFP Nos. 6, 16, and 21 and otherwise denied as to these RFPs, as to which the Court grants Defendant a protective order from producing further materials other than to the extent ordered herein.

Plaintiff also sought documents concerning claims assigned to Claims Specialists I and comparable persons, including documents reflecting the number of claims they were assigned in each year; the date of the assignment; the type of each such claim (i.e. foundation, roof, fire, water, storm, etc.); and the date the claim was closed. *See* RFP No. 18; Dkt. No. 26-1 at 7-8. Defendant argues that the requested claim information is irrelevant because allegations of an increased workload will not support a constructive discharge claim and that it would be unduly burdensome to comply with

the request.

To demonstrate constructive discharge, an employee must prove that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Landgraf v. USI Film Prods.,* 968 F.2d 427, 429-30 (5th Cir. 1992). "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.* at 430. "Mere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure," which "factors include (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 331-32 (5th Cir. 2004).

Under Fifth Circuit law, it is by no means clear that Plaintiff's requests for documents concerning claim assignments would be relevant to prove his constructive discharge claim based on allegations that Defendant greatly increased his workload after he returned from FMLA leave, much less (which Plaintiff does not appear to claim) constitute an adverse employment action or materially adverse employment action for purposes of his other claims. *See Ellis v. Compass Group USA, Inc.,* 426 F. App'x 292, 296 (5th Cir. 2011) ("Imposing a higher workload than that given to other

employees is not an adverse employment action under title VII."); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332-33 (5th Cir. 2009) (holding that reassignment to new supervisor with heavier workload was not adverse employment action for purposes of retaliation claim under facts of case); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (finding an unusually heavy workload involves administrative matters and is not an adverse employment action).

But, even if the requested documentation concerning the assignment of claims would be at least somewhat relevant to his constructive discharge claim, Federal Rule of Civil Procedure 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C). Defendant cites to Exhibit 2 to Michael Fawkes's deposition for support for its undue burden objection but does not include the deposition testimony concerning the exhibit. *See* Dkt. No. 36-1 at 20, 31-32, 39-40. According to Defendant, in 2011 the Claims Specialists II had a total of approximately 10,800 claims assigned to them. If that number were multiplied by the seven years for

which Plaintiff seeks documents, there would be potentially 75,600 claims assigned during the that time period.

Considering the needs of the case, the amount of resources likely necessary to produce the voluminous information that Plaintiff seeks, and the importance of the requested discovery in resolving Plaintiff's claim, the Court finds that the burden or expense of the proposed claim assignment discovery outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(2)(C)(iii). The Court denies Plaintiff's motion as to RFP No. 18 and grants Defendant a protective order from producing further materials in response to RFP No. 18.

Plaintiff also sought documents reflecting the organizational structure of Defendant's Central Region since January 1, 2009 regarding all employees who held the same or substantially similar position as Plaintiff, had managerial or supervisory authority, either direct or indirect, over employees in Plaintiff's position, and had oversight responsibility for human resources functions, whether direct or indirect, over employees in Plaintiff's position. *See* RFP No. 1; Dkt. No. 26-1 at 2. Based on the parties' agreement to limit the geographic scope of the requests and based on the considerations mandated by Rule 26(b)(2)(C), the Court orders Defendant to produce all charts or diagrams that show the organizational structure of the Personal Lines Property Loss Inside Claims Department in Defendant's Richardson office between 2009 and the present. The Court otherwise denies Plaintiff's motion as to RFP No. 1 and grants Defendant a protective order from producing further materials in response to RFP No. 1 other than to the extent ordered herein.

If Defendant asserts that no person was hired after Plaintiff's termination to fill his position, Plaintiff sought all documents relating to the allocation of Plaintiff's job duties to other persons employed by Defendant after Plaintiff was terminated. *See* RFP No. 22; Dkt. No. 26-1 at 9. Defendant asserts that there are no responsive documents. To the extent that Defendant's response is based on its position that Defendant was not terminated, in light of the considerations mandated by Rule 26(b)(2)(C), the Court orders Defendant to produce all responsive documents reflecting the allocation of Plaintiff's job duties or discussing – on a general level – the reassignment of claims previously assigned to Plaintiff after Plaintiff's employment ended. This does not include claims files themselves or documents that may show the reassignment of only a limited number of specific claim files. The Court otherwise denies Plaintiff's motion as to RFP No. 22 and grants Defendant a protective order from producing further materials in response to RFP No. 22 other than to the extent ordered herein.

Plaintiff also sought all documents relating to conversations or communications between Plaintiff and Addicks, Fawkes, or any other managerial or supervisory employee concerning or referring to Plaintiff's promotion, including his eligibility for promotion given his job performance, his salary within his current pay range, and his requests to be considered for promotion. *See* RFP No. 30; Dkt. No. 26-1 at 10. And Plaintiff sought all documents reflecting communications made by employees or agents of Defendant that make any reference to Plaintiff's job performance, potential promotion, leave of absences for medical reasons, or the allegations made in this lawsuit. *See* RFP No. 45; Dkt. No. 26-1 at 12. Defendant represents that it has

produced all responsive documents. Except to the extent that Defendant may later locate responsive documents that it must produce pursuant to Federal Rule of Civil Procedure 26(e)(1), the Court denies Plaintiff's motion as to RFP Nos. 30 and 45.

Plaintiff sought all documents related to the decision to terminate or constructively discharge Plaintiff. *See* RFP. No. 56; Dkt. No. 26-1 at 13. Defendant responds that it did not terminate or constructively terminate Plaintiff, and, therefore, it does not have any responsive documents. Except to the extent that Defendant may later locate responsive documents that it must produce pursuant to Federal Rule of Civil Procedure 26(e)(1), the Court denies Plaintiff's motion as to RFP No. 56.

Finally, under all the circumstances here and pursuant to Federal Rule of Civil Procedure 37(a)(5)(C), Plaintiff and Defendant will each bear its own costs in connection with Plaintiff's motion to compel [Dkt. No. 26].

## Conclusion

Plaintiff's Motion to Compel Production of Documents [Dkt. No. 26] is granted in part and denied in part to the extent explained above.

The Court will convene a scheduling conference on **November 13, 2015 at 10:00 a.m.** in Courtroom 1561, 1100 Commerce Street, Dallas, Texas 75242. Plaintiff's counsel and Defendant's counsel must attend in person. At that time, the undersigned will discuss with counsel an appropriate deadline for Defendant's completion of the document production ordered herein, any additional discovery that Plaintiff has reported that he may or may not seek on the basis of the Court's ruling on Plaintiff's Motion to Compel Production of Documents [Dkt. No. 26], and appropriate

modifications to the Court's scheduling order in light of all of these considerations as well as the Court's disposition of Defendant's Motion to Strike Witnesses or, in the Alternative, Motion for a Continuance of all Deadlines [Dkt. No. 33]. Plaintiff's counsel and Defendant's counsel are ordered to confer in person or by telephone and attempt in good faith to reach agreement on all of these matters in advance of this scheduling conference.

SO ORDERED.

DATE: November 9, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE