**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**REINHARD DRECHSEL**                                                                      **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 3:14-CV-162-KS-BN**

**LIBERTY MUTUAL INSURANCE
COMPANY d/b/a PEERLESS INSURANCE
COMPANY**                                                         **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [68] and Objection's and Motion to Strike Plaintiff's Summary Judgment Evidence and Brief in Support ("Motion to Strike") [89] filed by Defendant Liberty Mutual Insurance Company d/b/a Peerless Insurance Company. After considering the submissions of the parties, the record, and the applicable law, the Court finds that the Motion for Summary Judgment [68] is well taken and should be granted. The Court further finds that the Motion to Strike [89] should be denied as moot.

**I. BACKGROUND**

Plaintiff Reinhard Dreschsel ("Plaintiff") originally filed this action in the District Court of Dallas County, Texas, 68th District, in December 2013. Defendant Liberty Mutual Insurance Company d/b/a Peerless Insurance Company ("Defendant") timely removed the action to this Court on January 16, 2014. Plaintiff filed his Amended Complaint [4] on January 21, 2014, bringing claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Texas Commission on Human Rights Act of 1983 ("TCHRA"), Tex. Lab. Code. Ann. § 21.001, *et seq.*; disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the TCHRA;

interference with rights under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and retaliation under the FMLA.

Plaintiff began working for Defendant's predecessor in 1990 and continued in the same work until Defendant acquired the company in 2008. Plaintiff was 60 years old when he ceased working for Defendant, and held the title of Inside Property Loss Specialist II ("Specialist II"). The Central Region Supervisor during the relevant time was Andy Moore ("Moore"), with Mike Fawkes ("Fawkes") as Plaintiff's direct supervisor. At the time, Plaintiff was the highest paid Specialist II working for Defendant.

During his employment with Defendant, Plaintiff took multiple instances of medical leave: from October 5, 2009, to October 18, 2009, for back pain; from November 9, 2010, to January 2, 2011, for polycythemia; from July 5, 2011, to August 14, 2011, for a detached retina; and from June 5, 2012, to July 1, 2012, for depression, anxiety, and high blood pressure. After this last period of leave, Defendant's third-party administrator determined Plaintiff was not eligible for benefits and denied his claim, advising him of his right to appeal. Defendant advised Plaintiff that he may still be covered the company's FMLA policy for this time period. Plaintiff, though, never appealed the denial or applied for FMLA leave. On July 9, 2012, Plaintiff resigned from his employment with Defendant.

On January 4, 2013, Plaintiff filed a charge the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation, age discrimination, and disability discrimination. (Defendant's Appx. [72-10] at p. 208.) His disabilities, he claimed, were high blood pressure, anxiety, and depression. (*Id.*) He further claimed that Defendant had discriminated against him by failing to promote him to Senior Claims Specialist/Inside Property Loss Speciality III ("Specialist III"), giving him a heavy workload, and constructively discharging him.

2

Defendant filed its Motion for Summary Judgment [68] on July 29, 2016, and its Motion to Strike [89] on September 2, 2016. These motions have been fully briefed, and the Court is now ready to rule.

## II. MOTION FOR SUMMARY JUDGMENT [68]

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately

3

substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

### B. Time-Barred Claims

Defendant argues that Plaintiff can only recover on claims based in conduct occurring within 300 days of his EEOC charge, pursuant to 29 U.S.C. § 626(d)(1) and 42 U.S.C. § 2000e-5(e)(1). Plaintiff makes no argument against this assertion, other than to say that he is not seeking to recover for conduct occurring before this time period. He argues, though, that conduct before this time period is relevant to demonstrate that Defendant's bad behavior has been ongoing. Regardless, though, both parties agree that no conduct prior to March 10, 2012, 300 days before his January 2013 EEOC charge, can be conduct for which Defendant can be found liable, and the Court finds that this is an accurate understanding of the law.

### C. Age Discrimination Claims

The ADEA and TCHRA[1] both prohibit employers from discriminating against an individual based on his or her age and are evaluated using the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013). "Under this framework, the employee carries the burden of establishing a prima facie case of age discrimination." *Id.* (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 435, 350 (5th Cir. 2005)). Only when the employee can establish his prima facie case does the burden shift to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If this can be satisfied, the burden shifts back to the employee to prove the reason is pretextual. *Id.* In this case, because Plaintiff has not met his initial burden, the Court need not consider Defendant's reasons or whether they were pretextual.

To make out a prima facie case of age discrimination, Plaintiff must show

(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005)).[2] There is no dispute that Plaintiff meets the first two

---

[1] Claims under the TCHRA are analyzed under the same framework as the analogous federal statutes. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012)) ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

[2] Plaintiff argues that he does not have to show that employees treated better than him were in "nearly identical circumstances," but instead only has to show "he was paid less than a non-member for work requiring substantially the same responsibility." (Amended Brief in Support [91] p. 27.) One of the cases he relies on for this contention, however, unequivocally confirms the need for the circumstances of the better-treated employee to be "nearly identical" to

requirements. Defendant argues only that Plaintiff can not show he suffered an adverse employment action, and if he could, he can not show that a non-member of the protected class was treated differently than he was.

Plaintiff alleges three adverse employment actions he suffered. The Court addresses each one in turn.

### 1. Compensation

Plaintiff claims that he was compensated differently than other, younger employees. He readily admits, though, that those employees are Specialist IIIs, while he was a Specialist II. It is further undisputed that these employees did not report to Fawkes, Plaintiff's supervisor. (*See* Plaintiff's Appx. [87] at pp. 506, 511, 599-601, 605, 656-58, 506.) "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260. Even if the employees specified by Plaintiff did have a higher salary than he did, they were in different positions and reported to different supervisors, and the Court must hold that they were not in "nearly identical circumstances." As such, Plaintiff has failed to establish a prima facie case for disparate compensation.

### 2. Promotion

Plaintiff also argues that he was not promoted because of his age in violation of the ADEA and TCHRA. Plaintiff's difficulty here is the same as his difficulty regarding compensation in that he cannot point to any similarly situated employee that was not a member of his protected class, who

---

Plaintiff's. *Fields v. Stephen F. Austin State Univ.*, 611 F.App'x 830, 831 (5th Cir. 2015) (per curiam).

was promoted during the relevant time-period, that is, after March 10, 2012. The only promoted employee Plaintiff references is Edna Menard, who was promoted to Specialist III in February 2010, well before March 10, 2012. (*See* Plaintiff's Appx. [87] at p. 477.) It is not enough for Plaintiff to show that the Defendant did not promote him during the relevant time period, even if he qualified for a promotion and by all accounts deserved one. Plaintiff must show that he was not promoted *because of his age*. To do this, Plaintiff must establish that a similarly situated employee not in his protected class was promoted after March 10, 2012. Because he has failed to demonstrate this, Plaintiff has failed to establish the fourth element of his prima facie case as to Defendant's failure to promote him.

Even if he could establish his prima facie case against Defendant on this allegation, Defendant argues that it had a legitimate, non-discriminatory reason for not promoting him—there were no openings and no business need for a Specialist III during the relevant time period. Plaintiff again points to Menard's promotion to rebut this, claiming she was promoted without there ever being a formal posting. However, there is nothing in the record that suggests that Menard was appointed when there was no opening and no business need. Therefore, even if Plaintiff had established his prima facie case, which he has not, the Court would still find that Defendant had a legitimate, non-discriminatory reason for its failure to promote Plaintiff.

### 3. Constructive Discharge

"To prove constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Irvine v. El Paso Healthcare Sys.*, 250 F.3d 744 (5th Cir. 2001) (quoting *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997)) (per curiam). "Demonstrating constructive discharge imposes a high burden."

*Robinson v. Waste Mgmt. of Tex.*, 122 F.App'x 756, 758 (5th Cir. 2004). The following factors are considered when determining whether such conditions exist:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

*Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (quoting *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (alterations in original). This list, however, "is non-exclusive." *Irvine*, 250 F.3d at 744 (quoting *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997)). Plaintiff alleges discriminatory lack of promotion, badgering and harassment, and a heavier workload as his grounds for constructive discharge.

As discussed above, *see supra* II.C.2, Plaintiff cannot show a discriminatory lack of promotion. The badgering and harassment Plaintiff alleges concerns e-mails sent to him from his supervisor, Fawkes. These e-mails, though, contain nothing but requests that Plaintiff do required tasks, update Fawkes on certain claims, and makes changes that needed to be made with regards to other claims. (*See* Plaintiff's Appx. pp. 409-13.) These e-mails were legitimate, work-related requests that Fawkes, as Plaintiff's supervisory, was well within his rights to send. *See Smith v. Aaron's Inc.*, 325 F.Supp.2d 716, 727 (E.D. La. 2004) (holding that a supervisor giving "direct goals to accomplish and work-related instructions" was not harassment despite plaintiff's subjective feelings); *Aikens v. Banana Republic, Inc.*, 877 F.Supp. 1031, 1039 (S.D. Tex. 1995) ("[T]he mere fact that [plaintiff] experienced 'pressure' or was 'nitpicked' does not establish such intolerable working conditions as to give rise to a constructive discharge.").

As for Plaintiff's heavy workload, the Court does not find that it, standing alone, is enough to meet the "high burden" of proving constructive discharge. *See Robinson*, 122 F.App'x at 758.

Plaintiff cites only one case for his assertion that greater job responsibilities can be enough to support constructive discharge, *McConnell v. University of Alabama Healthcare Systems*, No. 16-0002-WS-N, 2016 WL 4132260 (S.D. Ala. Aug. 3, 2016). In *McConnell*, the Southern District of Alabama found that the plaintiff's allegations that her workload was double that of her white peers over a period of five months was enough for her to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* at * 5. Finding the defendant to have neglected to address this allegation entirely, the court held that "it was far from obvious that doing the work of two people for a protracted period cannot, at some point, become so intolerable as to support a constructive discharge." *Id.*

Plaintiff points to the fact that he was assigned more new claims than his peers in the months of January and February 2012. (*See* Plaintiff's Appx. [87] at p. 462.) Plaintiff fails to take into account the following months, where there were many Specialist IIs who were assigned more new claims than he was. (*See id.*) For example, in March, Plaintiff was assigned 76 new claim, while eight other Specialist IIs had more assigned to them, ranging from 85 new claims to 119. (*See id.*) Though the number of claims assigned to each Specialist II varied substantially from month to month, the Court sees no discernable pattern of assigning Plaintiff more claims than his peers. (*See id.*) Nothing in the record supports the idea that Plaintiff was "doing the work of two people for a protracted period." *See McConnell*, 2016 WL 4132260 at * 5.

Furthermore, Plaintiff testified that all of the Specialist IIs were assigned heavy workloads with which they were unhappy. (Defendant's Appx. [72-1] at pp. 39-40, 91-92.) Plaintiff, though, was the only one who terminated his employment with Defendant. Because none of the other Specialist IIs felt that their comparable workloads to be "so intolerable" that they "fe[lt] compelled to resign," the Court does not find that Plaintiff's heavy workload amounted to a constructive

9

discharge. *See Irvine*, 250 F.3d at 744 (quoting *Faruki*, 123 F.3d at 319). Because none of the conditions to which Plaintiff points support his argument, the Court finds that Plaintiff was not constructively discharged.

Therefore, because Plaintiff has failed to establish a prima facie case of age discrimination under any theory, the Court will **grant** Defendant's motion with respect to Plaintiff's claims under the ADEA and TCHRA, and they will be **dismissed with prejudice**.

### D. Disability Discrimination Claims

To make out a prima facie case of disability discrimination under the ADA and TCHRA, Plaintiff must prove:

> (a) [He] is disabled, has a record of having a disability, or is regarded as disabled, (b) [he] is qualified for [his] job, (c) [he] was subjected to an adverse employment action on account of [his] disability or the perception of [his] disability, and (d) [he] was replaced by or treated less favorably than non-disabled employees.

*Equal Emp't Opportunity Comm'n v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). Plaintiff concedes that he does not have a disability or a record of having a disability, but argues that Defendant regarded him as disabled due to anxiety and depression.

To survive summary judgment under this argument, Plaintiff "must produce sufficient evidence for a reasonable trier of fact to conclude that the employer perceived him, however erroneously, as having an impairment that substantially limited one or more of his major life activities." *Bennett v. Calabrian Chems. Corp.*, 324 F.Supp.2d 815, 833 (5th Cir. 2004) (citations omitted). "For an employer to regard an impairment as substantially limiting work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs." *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1051-52 (5th Cir. 1998). In cases where the

10

employer continued to employ the employee without any diminished job responsibilities, the Fifth Circuit has found that the employer did not perceive the employee as disabled. *See id.*

In this case, there is no evidence that Plaintiff was ever regarded as limited in his ability to perform his job. Furthermore, Plaintiff himself testified that he never told either Fawkes or Moore that he was diagnosed with anxiety or depression, though he did mention that he had "health issues" to Fawkes. (*See* Defendant's Appx. [72-1] at pp.73-74.) With Defendant unaware of his alleged impairment and in no way limiting his job responsibilities, the Court cannot find that Defendant regarded Plaintiff as disabled. Because Plaintiff cannot establish this first element of his prima facie claim for disability discrimination, the Court will **grant** Defendant's Motion for Summary Judgment [68] as to these claims, and they will be **dismissed with prejudice**.

### E. ADEA/ADA/TCHRA Retaliation Claims

Defendant argues that Plaintiff's claims of retaliation under the ADEA, ADA, and TCHRA must fail because he never engaged in a protected activity under those statutes. To establish these claims, Plaintiff must show that he (1) engaged in a protected activity, (2) suffered an adverse employment decision, and (3) a causal connection between the two. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Such protected activity includes opposition to unlawful practices under those statutes or participation in an investigation, proceeding, or litigation with regards to them. *See* 29 U.S.C. § 623(d), 42 U.S.C. § 2000e-3, Tex. Lab. Code. Ann. § 21.055.

Plaintiff testified that he never complained of discrimination to anyone at Liberty Mutual. (*See* Defendant's Appendix [72-1] at pp. 93-94.) He never filed a charge with the EEOC until after his employment had ended. Therefore, the Court must find that he did not engage in protected activity under the ADEA, ADA, or TCHRA. Defendant's motion will be **granted** as to the retaliation claims under those statutes, and they will be **dismissed with prejudice**.

### F.     FMLA Claims

Plaintiff brings two claims under the FLMA against Defendant: one for interference and one for retaliation. Defendant asserts that both of these claims fail as a matter of law. The Court will address each in turn.

#### 1.     FLMA Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" its provisions. 29 U.S.C. § 2615(a)(1). Plaintiff points to no action taken by Defendant that prevented him from applying for or taking FMLA leave. Instead, Plaintiff focuses on Defendant's alleged actions after he returned from work following his FMLA leave. These arguments do not speak to the interference claim but rather the retaliation claim. Finding no action on Defendant's part that interfered with Plaintiff's ability to take FMLA leave, the Court will **grant** Defendant's motion as to this claim, and it will be **dismissed with prejudice**.

#### 2.     FLMA Retaliation

To make out a claim for retaliation under the FMLA, Plaintiff must establish: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sough protection under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (citing *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001)). Plaintiff claims he suffered from adverse employment actions in the form of compensation discrimination, promotion discrimination, and constructive discharge. As discussed in more detail above, *see supra* II.C.3, Plaintiff was not constructively discharged. The Court therefore examines his claims of compensation discrimination and promotion discrimination.

12

The only FMLA leave within the limitations period[3] is the leave occurring from June 5, 2012, to July 1, 2012. Plaintiff terminated his employment with Defendant on July 9, 2012. Plaintiff has presented no evidence showing that his pay changed in this short time-frame, nor has he shown that he was denied a sought-after promotion during this time. As such, the Court must find that Plaintiff has failed to establish that he suffered an adverse employment action after he returned from his FMLA leave. Defendant's Motion for Summary Judgment [68] must therefore be **granted** as to Plaintiff's FMLA retaliation claim, and it will be **dismissed with prejudice**.

### III. MOTION TO STRIKE [89]

In its Motion to Strike [89], Defendant requests that certain evidence produced by Plaintiff be struck from the Court's consideration under its Motion for Summary Judgment [68]. Because the Court finds Defendant's Motion for Summary Judgment [68] to be well taken even when this evidence is considered, the Motion to Strike [89] will be **denied as moot**.

### IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [68] is **granted**. Plaintiff's claims are **dismissed with prejudice**.

IT IS FURTHER ORDERED AND ADJUDGED that Defendant's Motion to Strike [89] is **denied as moot**.

SO ORDERED AND ADJUDGED this the 20th day of October, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[3]Pursuant to 29 U.S.C. § 2617(c)(1), the statute of limitations for an action under the FMLA is two years. This action was originally filed in December 2013, and the FMLA claims were added in the Amended Complaint [4] filed on January 21, 2014. Any actionable conduct, then, must have occurred after December 2011 at the earliest. The only FMLA leave taken during this time was the leave he took from June 5, 2012, to July 1, 2012.